THOMAS *v.* THOMAS.

4-7501                                             184 S. W. 2d 812

Opinion delivered January 15, 1945.

*June P. Wooten,* for appellant.

*J. Wendell Henry,* for appellee.

McHANEY, J.   Appellant and appellee were married January 3, 1942. According to his service record appellant was inducted into the armed forces of the United States on April 18, 1942, at Camp Robinson, Arkansas, and two days later was sent to Camp Roberts, California, where he arrived April 23, and was transferred from there to Camp Hornbeck, Louisiana, on August 1, 1942, arriving August 7, and from there to Camp McCoy, Wisconsin, on June 9, 1943, and to Camp Atterbury, Indiana, arriving June 15, 1943. On June 6, 1943, appellee gave birth to a normal baby, which must have been begotten

about September 6, 1942. In December, 1942, he learned of his wife's pregnant condition through his mother and on March 22, 1943, he brought this action for divorce on the ground of general indignities and adultery, alleging as to the latter that she was then pregnant and that he had had no carnal knowledge of her since his induction into the army. The answer was a general denial. Trial resulted in a decree dismissing his complaint for want of equity.

Appellant testified that he had not seen his wife since April 17, 1942, the day before his induction into the army; that he had only two letters from her—one relating to an application for an allowance for herself as his wife and the other about her and her mother picking strawberries; that she never advised him of her pregnancy or that she had given birth to a child; that he learned these facts from his mother; that he had only one furlough prior to the filing of this suit which was from November 7 to November 15, 1942, on which occasion he went home to visit his mother, but did not see appellee. These facts indicate strongly impossibility of access to his wife so as to make improbable that he is the father of said child.

Other testimony was introduced indicating strongly that appellee was guilty of misconduct in Little Rock, or at least conduct which was improper in a virtuous wife. For instance, Athelene White, who had known appellee all her life and was a friend of appellant, testified she had a conversation with appellee in Little Rock in September, 1942, in which appellee asked her for appellant's address, which she gave her as being in California. This was an error, as his service record showed him then to be in Louisiana. She also testified she talked to appellee after appellant was at home in November, in which conversation appellee stated she had heard he was home and asked witness if she knew where he was. Also that she saw appellee on several occasions armed up with soldiers on the streets of Little Rock. Just when she saw this is not developed in the evidence. Another witness, Mrs. Stanphill, who operates a rooming house at 603 Scott

street,. in Little Rock, testified that she met appellee on July 26, 1943, when she and her sister moved into her rooming house. Appellee gave her maiden name of Virginia Hatfield and was so known while there by all the other roomers; that she saw appellee with several different men on several occasions; that men would call on her on evenings and she would go out with them; that she had more calls from various men than the other girls who lived in the house; that she would come to her room at all hours of the day and night until finally she asked appellee to move; that she did not tell witness she had a baby or that she was married; that when witness asked her to move she asked why and told her it was because of her conduct and asked her if her name was not Thomas instead of Hatfield and if she did not have a baby just a few months old, which witness had previously heard, and that appellee became furious and would neither admit nor deny the accusations. Appellee did not testify, nor did she offer any testimony.

Whether there was impossibility of access of appellant to appellee at the time said child was begotten, we do not now decide. Nor do we now decide the force and effect to be given to the service record of appellant as a soldier. It may be that leaves of absence in the form of two- or three-day passes would be given by his commanding officer which would not be shown on the service record because the C. O. might direct his name not be called at the morning check-up.

The testimony of Mrs. Stanphill relates to appellee's misconduct at a time subsequent to July 26, 1943, which was about four months after the filing of the complaint and cannot sustain the allegation of indignities or adultery. In the recent case of *Buck* v. *Buck*, 207 Ark. 1067, 184 S. W. 2d 68, we said: "The annotator's note to the case of *Renner* v. *Renner*, 127 A. L. R. 674, states the rule to be that a divorce will not be granted for causes arising after the action was brought. Among other cases cited to support this statement is our own *Spurlock* v. *Spurlock*, 80 Ark. 37, 96 S. W. 753. In this Spurlock case it was said that the cause of divorce must exist before the commence-

ment of the suit, although it was held competent to prove the relation between the defendant and the co-respondent after the suit had been filed, not as a ground for divorce, but as corroborating testimony as to the improper relations before the suit was filed.''

So, while the testimony of Mrs. Stanphill and Miss White cannot be considered, in the present state of the record, as a ground of divorce, but only as corroborating testimony as to her misconduct or adultery before the suit had been filed, we think the ends of justice require a reversal of the case and a remand for a new trial at such time as appellant may be able to be present and aid and assist his counsel in the preparation of his case, either during the war or thereafter, giving full force and effect to the Soldiers' and Sailors' Relief Act, 50 U. S. C. A. appendix, § 501 *et seq.*, to the end that the available evidence may be more fully developed, including the service record of appellant and the force and effect to be given it, and with the right of appellant and appellee to file additional pleadings, if they are so advised.

It is so ordered.