## J. M. (Sam) SOWARDS *v.* Mavis SOWARDS

5-4421                                        422 S. W. 2d 693

Opinion delivered January 8, 1968

*Shaver, Tackett & Jones;* By *Nicholas H. Patton,* for appellant.

*Don Steel,* for appellee.

J. Fred Jones, Justice. This appeal is from a Howard County Chancery Court decree in which the appellee, Mrs. Sowards, was granted an absolute divorce on her complaint alleging personal indignities against Mr. Sowards. Mr. Sowards relies on the following points for reversal:

"The evidence is not sufficient to support the Court's awarding a divorce upon the grounds of personal indignities.

"If the testimony of the Plaintiff is deemed sufficient to set forth personal indignities there is no other testimony to corroborate the testimony of the Plaintiff."

Appellant and appellee were married in 1947 and one daughter was born as a result of the marriage. At the time of the trial appellant was sixty-two years of age, appellee was forty-five, and the daughter was seventeen. The record in this case is fairly clear that if appellant and appellee ever had any real affection for each other, it gradually turned into mere tolerance which has finally broken down into contempt under the accumulated weight of small indignities which real affection would have survived. As appellant and appellee drifted apart, appellee and the daughter became closer and appellant felt more and more left out and ignored by both of them. When the appellant was unable to purchase with money and gifts the affections of his wife and daughter, he could not conceal hurt feelings and resentment and attempted to alleviate his frustrations by demanding from the appellee and the daughter more than he was willing, or knew how, to give.

After the complaint was filed by appellee, the record indicates that appellant indicated a desire for a reconciliation and that everyone, including the attorneys as well as the chancellor, encouraged a reconciliation. But the appellant went about effecting a reconciliation by laying down specific ground rules for the appellee and their daughter to follow in order to effect a reconciliation, when all of the time, appellee was the one who wanted the divorce and appellant was the one who wanted the reconciliation. The appellee simply required that appellant "change his attitude," but neither the appellant nor the appellee agreed to make any changes—except in each other, and neither recognized the need for any change in themselves. So the chancellor was obviously right in concluding that appellant and appellee would not live together again.

We now come to the question of whether or not appellee proved such indignities as would entitle her to a divorce. Although the appellant and appellee had occupied separate bedrooms for about seventeen years, the insurmountable difficulties that both parties appear willing to recognize seem to have originated from a family lawsuit between the appellant and his brothers and sisters over property, some year or so prior to their separation in July 1966. Appellee testified that appellant demanded that she testify as a witness for him in that lawsuit, even though she felt that appellant was wrong. The appellant testified that he only wanted the appellee present in the court room with him since his brothers and sisters had their spouses present, and that he was hurt, disappointed and humiliated that she refused to go with him to court.

Appellee and the daughter testified, and appellant admitted, that he had on two occasions threatened to leave home and abandon the appellee and the daughter, if the daughter did not start showing more affection for him. Appellee and the daughter both testified that while they would be watching television programs in the den of their home, appellant would change the channel or station even though he had an additional television set in his bedroom. Both appellee and the daughter testified that appellant remarked late one evening that it was about time for the appellee and the daughter to start roaming around (referring to appellee playing bridge and the daughter going on dates). Appellee and the daughter both testified that appellant objected to appellee receiving telephone calls from her friends.

Perhaps appellant's general attitude is best evidenced by his demands as a condition in effecting a reconciliation after the separation. Mrs. Wilson's testimony corroborates that of appellee, that during the course of Mrs. Wilson's efforts, at appellant's request, to help effect a reconciliation between appellant and appellee, the appellant announced that he would be the

master of the house, that he would quit playing dominoes, but that appellee's bridge playing would be limited to one night each week. Mrs. Wilson's exact testimony on this point is as follows:

"He said 'I'll tell you what I'll do, Duchess. If you and Kay come home I'll quit playing dominoes and you are to play bridge once a week and stay off the telephone.' He said this gossiping and playing bridge, gossiping over the telephone and all that had to stop. . . . He would be master of the house."

The appellee testified that after the lawsuit appellant had with his brothers and sisters, he demanded that she and the daughter have nothing whatever to do with his relatives and forbade them even speaking to his relatives; that at the time of separation, on July 4, 1966, when she and the daughter returned from a 4th of July weekend at Camp Albert, appellant had gone to Texas leaving a very sarcastic note indicating that he had finally carried out his previous threats of deserting them. Appellee testified that appellant slept a lot during the day and became furious when awakened for any reason at all; that the appellant had developed a strong hatred for anyone who disagreed with him, including his own people, and would talk about his hatred for people all the time. Appellee testified that she had to be very careful about what subject she brought up to keep appellant from flying into a rage at the mention of the name of someone he did not like; that he liked no one and hated everybody. Appellee testified that because of appellant's actions she had become very nervous and her health had become impaired; that since their separation her condition had improved. Most of this testimony was corroborated by the daughter.

The record reveals much as to the personalities and temperaments of the parties to this divorce action. The record also indicates that the chancellor was personally acquainted with the appellant and the appellee in this

case. In any event, the chancellor was in a position to observe the demeanor of the parties and the witnesses as they testified, and was in a better position to weigh and evaluate the testimony and therefore in a better position than we are to determine what does or does not constitute such indignities between these particular parties in this particular case as to render the marriage between them intolerable to one of them.

Although we are not unmindful of the fact that chancery cases are tried *de novo* on appeal, we will not disturb the findings of the chancellor unless they are against the preponderance of the evidence. (*Greer* v. *Greer,* 193 Ark. 301, 99 S. W. 2d 248; *Fitzgerald* v. *Fitzgerald,* 227 Ark. 1063, 303 S. W. 2d 577.) On reviewing the evidence, we are also in accord with a quote from *Snyder* v. *Snyder,* 233 Ark. 188, 343 S. W. 2d 420, which states:

"This case affords a classic application of the well organized statement that the Judge, seeing the witnesses, is in a better position to decide the credibility than is an appellate court, which merely sees the words on the page."

In *Ham* v. *Ham,* 224 Ark. 228, 272 S. W. 2d 446, we said:

"In a genuinely contested case the corroborating proof may be relatively slight, since the purpose of this requirement is to prevent collusion." (Citing *Morgan* v. *Morgan,* 202 Ark. 76, 148 S. W. 2d 1078.)

It is not necessary that the testimony of the complaining spouse be corroborated on every element or essential in a divorce suit. Nor is it necessary that the person to whom the divorce is granted on the grounds of indignities be wholly blameless. (*Coffey* v. *Coffey,* 223 Ark. 607, 267 S. W. 2d 499; *Haley* v. *Haley,* 44 Ark. 429.)

We conclude that the chancellor's decree is not clearly against the preponderance of the evidence in this case and should be affirmed.

Affirmed.

BROWN, J., not participating.