Fred McNEW *v*. Ruth B. McNEW

77-108                                             559 S.W. 2d 155

Opinion delivered December 19, 1977
(In Banc)

*George F. Hartje,* of *Hartje & Burton,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

JOHN A. FOGLEMAN, Justice. Ruth and Fred McNew were married in November, 1967, when both were 47 years of age. He was a widower without children. She was a widow with three children. Both were employed full time and had some assets. They were separated sometime in November, 1975, according to appellee's testimony. She had instituted an action for divorce on October 29, 1975, alleging indignities to her person, specifically stating that Fred had treated her with contempt, neglect, ridicule and abuse, systematically and continually. He also sought a divorce on the same grounds. Her prayer was granted and she was awarded one-third of his personal property and one-third of his realty for life. The court's decree contained findings that Ruth McNew's allegations had been established by a preponderance of the evidence and corroborated by Jean Warren and that the allegations of appellant's counterclaim for divorce had not been established. Appellant contends that appellee failed to prove her grounds for divorce because of lack of corroboration by her sole witness, Jean Warren. We agree.

Mrs. McNew complained of her husband's lengthy absences from home during the week, in following his employment, and attention to business affairs when at home on weekends. She testified that there had been a serious break in the marriage in 1972 when she lost her temper as the result of an argument and slapped him. She said that Fred retaliated by striking her and that she had left and driven to Mountain Home, but had returned and moved out of his bedroom. She then demanded that he support her fully out of his salary and he agreed. At that time, she withdrew one-half of a joint checking account and never again contributed anything to that account. She said that she had counseling and tried to move back into the master bedroom she had left to him and that they had sexual intercourse on two occasions, but she quit trying after two years.

She related that they did not entertain often because he was only at home on weekends and, since there was so much to be done on Saturday, both were usually tired. According to her, when they did have guests for dinner, Fred would leave

the table and, rather than just help clear the dishes, would wipe off the stove, pick up the dishes, sweep out the crumbs, and start the dishwasher, even before the meal was completed, to her embarrassment. She also said that he made derogatory remarks to her, but never in the presence of anyone else. She added that he paid the bills, but would not share marital relations and that they did no formal entertaining and had no social life. She testified that the situation became intolerable.

Jean Warren had known both parties for 23 years. She testified that the McNews did not entertain much, but that she and her husband had been in the McNew house on occasion. She said that Fred would sometimes get up and start cleaning the stove, cleaning up the kitchen, etc., instead of visiting with the Warrens. According to her, Ruth resented this and she thought Ruth was embarrassed by it. She said nothing else that could be considered in determining whether her testimony was corroborative, except that McNew was often away from home and that he was not at home once or twice when Ruth was ill with "flu."

We have said that corroboration may be comparatively or relatively slight when it is clear that there is no collusion between the parties. *Sowards* v. *Sowards,* 243 Ark. 821, 422 S.W. 2d 693; *Anderson* v. *Anderson,* 234 Ark. 379, 352 S.W. 2d 369; *Adams* v. *Adams,* 252 Ark. 20, 477 S.W. 2d 183. There is no evidence of collusion here.

In considering the sufficiency of the corroboration, it is necessary that we consider the evidence necessary to establish appellee's ground for this divorce. In *Gibson* v. *Gibson,* 234 Ark. 954, 356 S.W. 2d 728, we said:

> *** Indignities may mean a number of things in various circumstances but in order to constitute the grounds for divorce they must be constantly and persistently pursued with the object and effect of rendering the situation of the opposing party intolerable.

We have said that the indignities must be continuously and persistently pursued with the purpose and effect of causing an enduring alienation and estrangement. *Wiles* v. *Wiles,* 246

Ark. 289, 437 S.W. 2d 792. The granting of a divorce on this ground requires a showing of habitual, continuous, permanent and plain manifestation of settled hate, alienation and estrangement on the part of one spouse, sufficient to render the condition of the other intolerable. *Welch* v. *Welch,* 254 Ark. 84, 491 S.W. 2d 598. In *Welch,* we pointed out that because the construction we have given this part of the divorce statute goes to the very verge of safety and is to be cautiously applied, careful attention must be given to the corroborating evidence. We stated that corroboration must be testimony of a substantial fact or circumstance which leads an impartial and reasonable mind to believe that material testimony as to a vital fact or circumstance is true; and that it was vital to a complaining spouse's suit for divorce on this ground to show that a *course* of conduct pursued by the other spouse was the cause of an intolerable condition of the complaining spouse.

It is true that corroboration of every element or essential in a divorce suit is not required. *Sowards* v. *Sowards,* supra. Here the testimony of Jean Warren about a few isolated instances when she was present and obviously felt that Fred had conducted himself rudely toward her and her husband to such an extent that she thought Ruth was embarrassed is not corroborative of any course of conduct, habitually, continuously, constantly or persistently pursued or that the object, purpose or effect of the conduct was to render Mrs. McNew's condition intolerable. See *Dunn* v. *Dunn,* 255 Ark. 764, 503 S.W. 2d 168. The same may be said of the testimony about the husband's absence on one or two occasions when the wife had flu. It is undisputed that his job required him to be away from home during the week and there was nothing in her testimony to indicate that the wife's illness was known to him or that his presence and attention was really needed. In spite of the fact that there is a definite trend toward judicial leniency in the requirement of corroborating testimony, the limits of safety would be passed if we approved this testimony as sufficient corroboration.

Appellant, somewhat inconsistently with his argument about the sufficiency of the corroboration of appellee's testimony, argues that the court erred in denying him a divorce on the basis that his own testimony was not cor-

roborated. We have already indicated that we feel that the requirement of corroboration is still applicable and appropriate. We have so considered it in *Adams* in 1972, in *Welch* in 1973, and in *Dunn* in 1973. There is nothing that calls upon this court to engage in the judicial activism that would be required for our nullifying that requirement. The fact the legislature has not seen fit to abolish the rule is not sufficient, particularly in view of the fact that there has been legislative amendment of the divorce statutes at least 24 times, one of which was the amendment of the pertinent section, Ark. Stat. Ann. § 34-1207 (Supp. 1975), in 1969, to eliminate the requirement of corroboration on all except one ground for divorce, in uncontested cases. We must presume that the General Assembly considered, and still considers, corroboration important in contested cases. Historically and appropriately, divorce has been governed and regulated by statute in Arkanaas. *Young* v. *Young,* 207 Ark. 36, 178 S.W. 2d 994, 152 ALR 327. It is best that changes in the divorce law be left to that branch of government which is the repository of all powers of government not vested in the other two branches, and which is most representative of the people, the ultimate sovereign.

Appellant has urged other points for reversal, one of which is the constitutionality of our statutes governing allowance of alimony, attorney's fees and dower pursuant to Ark. Stat. Ann: §§ 34-1210, 1211 and 1214 (Repl. 1962). The view we take of this case renders it unnecessary to consider any of these points. It would be improper for us to consider the arguments that the statutes mentioned violate the equal protection clauses of both the Arkansas and United States Constitutions. Appellant has no standing to raise any question about alimony and attorney's fees, because no allowance was made. We will not decide constitutional issues unless their determination is essential to disposition of the case.

The decree is reversed and the complaint and counterclaim dismissed.

HICKMAN, J., dissents.

BYRD, J., not participating.

DARRELL HICKMAN, Justice, dissenting. I would affirm the decision of the chancellor in awarding the divorce. The majority, in my opinion, is essentially retrying the case. Normally in a close case, and this is indeed one, we affirm the findings of the chancellor unless they are clearly against the preponderance of the evidence. *Sowards* v. *Sowards*, 243 Ark. 821, 422 S.W. 2d 693 (1968). We have, in my opinion, upheld similar decrees where the evidence of fault was slight and barely corroborated. *Kirk* v. *Kirk*, 218 Ark. 880, 239 S.W. 2d 6 (1951).

Since I would affirm the chancellor's findings on the grounds for divorce, I would then face the issues raised by the appellant-husband regarding the constitutionality of certain Arkansas statutes regarding property disposition in divorce cases.

The Arkansas law provides that if the wife is awarded the divorce she *must* be given one-third of the husband's real estate for life and one-third of the husband's personal property absolutely. There is no similar provision in the event the husband is granted the divorce. Ark. Stat. Ann. § 34-1214 (Repl. 1962). The parties were both married before. During this marriage, according to evidence that is not really disputed, the appellee-wife had accumulated property of a value of about $100,000.00. Some was held in her name, and some jointly with her husband. The appellant had through diligence increased his property holdings. Undoubtedly the husband had contributed substantially to the wife's increase of property. The chancellor correctly applied the Arkansas law and arbitrarily awarded the wife one-third of the husband's real estate for her life and one-third of his personal property absolutely. The chancellor could not have awarded the husband any of the wife's property, according to Arkansas law, and had to award the wife property simply because she was granted the divorce. Therein lies the obvious inequity and discrimination.

The Arkansas law regarding property was enacted before the turn of the century and can no longer be defended historically or legally with any confidence. It clearly violates the Equal Protection Clauses of the Arkansas and the United States Constitutions. Ark. Const., Art. 2, § 3; U.S. Const.,

Amend. XIV, § 1.

Parties marry, share their love, lives, fortunes and misfortunes. In divorce they should share equally the property they have accumulated during their marriage. Anything less is obviously unfair.

I cannot say that the Arkansas law *permitting* alimony, child support and attorney's fees for the wife is unconstitutional. The Arkansas statutes do not require the award of alimony, child support or attorney's fees but authorize such awards depending upon the circumstances of the parties and the nature of the case. Ark. Stat. Ann. §§ 34-1210; 34-1211 (Repl. 1962). Not only are these statutes not unconstitutional on their face in my opinion, but historically there remains a need for such laws. Some women forsake education to become full-time homemakers. Alimony permits a court to correct any financial inequities because of the parties' circumstances.

In passing, it should be noted that the divorce laws in Arkansas in general are archaic and need revision. It would certainly be best if the legislature reviewed and revamped these laws so that they would not only meet constitutional tests but also be more suitable in assisting people to resolve their domestic disputes.

I would remand this case for the court to enter an order which would fairly and equitably divide the parties' property.