Etta M. ELERSON *v.* George Franklin ELERSON

CA 82-63                                          640 S.W.2d 460

Court of Appeals of Arkansas
Opinion delivered October 20, 1982

256

*Floyd M. Thomas, Jr.* of *Brown, Compton & Prewett,* for appellant.

*George Van Hook, Jr.,* for appellee.

GEORGE K. CRACRAFT, Judge. On November 18, 1980 a decree was entered in the Chancery Court of Union County granting George Franklin Elerson a divorce from Etta M. Elerson and approving a written property settlement agreement between the parties. The decree was entered on testimony taken in open court and on the appellant's written entry of appearance in which specific reference to the property settlement agreement as a complete settlement was made.

On December 3, 1980 appellant filed a motion seeking to set aside the decree and property settlement, contending

that because the appellee had led her to believe that the divorce action had been dismissed the decree was fraudulently procured. She further contended that during the pendency of the action the parties had become reconciled and lived together as husband and wife under such circumstances as would effect condonation of all marital offenses and abrogation of their settlement. She brings this appeal from the chancellor's order dismissing her petition for want of equity.

According to the record these parties had been having marital difficulties for some period of time prior to their decision in the latter part of June 1980 to obtain a divorce. They then entered into a full and complete property settlement agreement and a suit for divorce was filed in the chancery court by appellee. Appellant's entry of appearance and the property settlement were also filed that same day. The parties had previously agreed that the appellant would move to Milwaukee where she had arranged for a job transfer with her present employer. Under the property settlement agreement appellee would retain the family residence. The parties agreed that the appellant would remain in that residence for two weeks in order to make her moving arrangements. During that period appellee went on vacation visiting with relatives.

The appellant testified that during that two week period she spoke with appellee on the telephone and the parties agreed to a reconciliation. She testified that he then returned to El Dorado and they resumed their marital relationship until November 19th when she was informed that the decree had been entered. She testified that during the period of reconciliation divorce was never again discussed and that appellee agreed to arrange with the attorney to stop the divorce proceeding, leading her to believe that he had done so as a result of their reconciliation. She testified that she was not aware that the divorce action had not been dismissed until the decree was entered by the court.

The testimony of the appellee was in direct conflict as to the events during this period. He testified that they had ceased to have a marriage long before their separation. Their

problems came to a head when it was discovered that their seventeen year old unmarried daughter was pregnant. He testified that appellant became enraged because he would not order the child out of the home. When he refused to do so she left the home and the divorce proceedings were then initiated. The appellee denied that he had ever agreed to a reconciliation. He testified that while he was on vacation after the complaint and agreement had been filed he received word from one of his children that the appellant was in bad emotional condition and was hysterical. At the suggestion of his daughter he called appellant. She informed him that the pregnant daughter had gotten married and that as a result she had developed an emotional problem and thought she was having a heart attack. She informed him that she had changed her plans about moving to Milwaukee and that she was going to the hospital. He stated that he refused her overture toward reconciliation in that conversation.

Upon his return to El Dorado he found that she was still in the house sleeping in one of the extra bedrooms. He denied having agreed at any time to a reconciliation but stated that he only permitted her to remain in the residence because of her physical and mental condition. He admitted that they did share the same bedroom for a "short period" and admitted to having sexual relations with her. He stated that she initiated both the return to his bedroom and the intercourse and that he had consented only because of her severe emotional crisis for which she was then receiving psychiatric treatment. He testified that he had no feelings for her and that when she fully realized this she stormed out of the bedroom and slept elsewhere, subjecting him to the same treatment that had caused them to seek the divorce. He denied ever telling her that he was going to dismiss the lawsuit or that abrogation of the property settlement agreement was ever discussed. He stated that prior to instructing the attorney to proceed with the divorce he had asked her if her emotions were in such a state that she was ready to go through with the divorce. He testified that she responded "Why not?" He stated that he told her when the divorce was going to be submitted and she knew the date. He further testified that on the date the decree was entered he gave her a copy of it and she asked him when he expected her to move.

Appellant first contends that the chancellor should have set the divorce decree aside because the appellee had fraudulently led her to believe that the divorce proceeding had been terminated and that they had become reconciled. In support of her position she relies on *Seay* v. *Seay*, 239 Ark. 1115, 396 S.W.2d 838 (1965) which holds that such conduct does constitute fraud which would justify the vacating of a decree. In *Seay* the court upheld a finding of the chancellor that such fraud was indeed practiced. Here the chancellor made a contrary finding.

While we review chancery cases *de novo*, it is well settled that we will not set aside the findings of a chancellor unless clearly against a preponderance of the evidence, and in making that determination we give due regard to the superior opportunity of the trial court to judge the credibility of the witnesses. Rule 52 (a) Arkansas Rules of Civil Procedure; *Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W.2d 494 (1981). We cannot say that the chancellor's finding is clearly against a preponderance of the evidence.

Appellant next contends that the trial court erred in not setting aside the decree because the return to the marital bed had effected a condonation of all grounds for divorce set forth in the appellee's complaint. Continued cohabitation after acts constituting marital misconduct have been committed is *evidence* of condonation, but standing alone this is not conclusive. There are exceptions where the health of one of the parties is involved or where cohabitation is continued in hope of receiving better treatment from the other party. *Weber* v. *Weber*, 256 Ark. 549, 508 S.W.2d 725 (1974); *Shirey* v. *Shirey*, 87 Ark. 175, 112 S.W. 369 (1908). Condonation is a conditional rather than absolute remission of the offense, the implied condition being that the offense will not be repeated and that the guilty party shall not in the future commit any other marital offense or, as it is frequently expressed, that the offender will treat the injured party with conjugal kindness. *Coffey* v. *Coffey*, 223 Ark. 607, 267 S.W.2d 499 (1954); *Bridwell* v. *Bridwell*, 217 Ark. 514, 231 S.W.2d 117 (1950); *Longinotti* v. *Longinotti*, 169 Ark. 1001, 277 S.W. 41 (1925). If the testimony of appellee is believed, and the chancellor did believe it, he would be justified in

applying either of the two exceptions to the rule of condonation. We cannot conclude that his findings are clearly against a preponderance of the evidence.

The appellant next contends that the continued cohabitation after the property settlement agreement at least had the effect of abrogating it. In *Carter* v. *Younger*, 112 Ark. 483, 166 S.W. 547 (1914) and *Dennis* v. *Younts*, 251 Ark. 350, 472 S.W.2d 711 (1971) our court declared the applicable rule as follows:

> Where the parties to a valid separation agreement afterward come together, and live together as husband and wife, where their conduct toward each other is such that no other reasonable conclusion can be indulged than that they had set aside or abrogated their agreement of separation, then such agreement should be held as annulled by the parties to it, and their marital rights determined accordingly.

Our conclusion on the preceding point is dispositive of this argument. The burden of proving the conduct of these parties towards each other was such that no reasonable conclusion could be indulged except that they had set aside their agreement was upon the appellant. The chancellor correctly concluded that the only evidence here which might fit the requirements of that rule was the admission by the appellee that he had sexual relations with appellant during this period. He found, however, no evidence of an agreement to resume the marital relation of husband and wife or to abrogate that settlement. He recalled no testimony from the wife to that effect and none has been pointed out to us. The appellee denied that there had been any reconciliation or an agreement to resume the marital relation. We cannot say that the chancellor's finding was clearly against a preponderance of the evidence.

We affirm.