Chester BELL v. Lucille Slatton BELL

CA 84-380                                   691 S.W.2d 184

Court of Appeals of Arkansas
Division I
Opinion delivered June 19, 1985

*David Throesch*, for appellant.

*Ponder & Jarboe*, by: *Dick Jarboe*, for appellee.

GEORGE K. CRACRAFT, Chief Judge. Chester Bell appeals from a decree of the Chancery Court of Lawrence County granting Lucille Slatton Bell a divorce and disposing of their properties. We find no merit in any of the five points for reversal advanced and affirm the decree of the chancellor.

The parties were married in December 1981 and separated on January 27, 1984. At the time of the marriage appellee was the owner of a tract of land in Lawrence County. During the marriage the parties acquired properties as tenants by the entirety.

On February 1, 1984 the appellee brought this action for divorce on grounds of indignities to her person consisting of assaults, unmerited reproach, insult and studied neglect. The appellant answered denying any grounds for divorce and counterclaimed for divorce on grounds of personal indignities. By way of counterclaim he further alleged that during the marriage the appellee had executed a deed to her non-marital property in Lawrence County in which she established an estate by the entirety with him. He further alleged that a subsequent deed by him restoring that property to her was obtained by mutual mistake or fraud and should be cancelled. The chancellor found that the appellee had established her grounds for divorce and denied the appellant's counterclaim on a finding that he had failed to prove by a preponderance of the evidence that the deed was result of mutual mistake or fraud and decreed that the property was the sole and separate property of the appellee.

At the trial the appellee called her retarded child to testify in her behalf. He testified that on one occasion he saw the appellant strike his mother. During the course of his examination, however, he testified that the appellee was now living with another man in her house. He testified the other man had been there "this week" and that during the week preceding the trial she had been sleeping in the same bed with this person. The appellee by way of rebuttal testified that the man was living at her house but was paying rent and she denied any sexual involvement with him.

The appellant first contends that it was error to grant appellee a divorce because the child's testimony established by a preponderance of the evidence that she was guilty of adultery. We find no merit to this argument. There was no complaint by the appellant that the appellee was guilty of adultery. The appellee denied the allegation and offered an explanation for the presence of that person in her home. The chancellor was not required to believe the testimony of any witness and could find that of the appellee to be more credible. In chancery cases we do not reverse

the findings of a chancellor unless they are clearly erroneous, and in arriving at that conclusion we give due regard to the superior position of the chancellor to judge the credibility of the witnesses and the weight to be given to their testimony. *Burns* v. *Lucich*, 6 Ark. App. 37, 638 S.W.2d 263 (1982). Furthermore, this testimony would relate to misconduct at a time subsequent to the filing of the complaint and could not sustain the allegation of indignities or adultery. It is well established that a divorce will not be granted for causes arising after the action was brought and the grounds must exist before the commencement of the suit or before the counterclaim is filed. In a proper case such evidence may be competent to prove subsequent misconduct, not as a ground for divorce, but as evidence corroborating a propensity to commit the alleged prior acts. *Thomas* v. *Thomas*, 208 Ark. 20, 184 S.W.2d 812 (1945).

In support of her petition for divorce the appellee testified that there had been numerous separations during the period of their marriage, all resulting from his cruelty to her. She stated that he beat her, slapped her, twisted her arm, and knocked her against the wall on many occasions. He had alienated her grown children and her family to such a point that they would no longer visit her. She testified that on some occasions he threw her clothes out of the house, telling her never to return, and accused her of associating with other men. She testified that on the date she last left him he had grabbed her by the hair, pulled her out of a car and severely choked and beat her. He tried to forcibly remove her wedding ring. After that she never returned to his home. Three of appellee's children testified that they had seen appellee in February 1984 when she was very upset and crying. She had red marks around her neck which were clearly visible and her hands were skinned up "pretty good." Her daughter testified that he had so alienated her that she had not visited with appellee for several years. Other relatives testified to similar experiences. The relationship between the party, her children and family is one which is protected by law. Where one unreasonably interferes with this relationship it does constitute personal indignities. *Rosenbaum* v. *Rosenbaum*, 206 Ark. 865, 177 S.W.2d 926 (1944); *Connor* v. *Connor*, 241 Ark. 405, 408 S.W.2d 486 (1966).

The appellant argues that as the appellee had always returned to the marital bed after the separations that all of the

earlier beatings and cruel acts were condoned. Our cases, however, hold that condonation is a conditional rather than absolute remission of the offense and, the implied condition being that the offense will not be repeated, the guilty party shall not in the future commit any marital offense but will treat the injured party with kindness, and if the forgiven party resumes the prior conduct the doctrine does not apply. *Elerson v. Elerson*, 6 Ark. App. 255, 640 S.W.2d 460 (1982). There was evidence from one of her adult children that during the first year of the marriage they would break up quite a bit and the appellee would come to the witness's house and show her the bruises. Furthermore, even if the earlier acts of cruelty be deemed conditionally condoned, there was evidence that on the day she finally separated from him in February 1984 he severely beat her, pulled her out of her car by her hair, beat, and choked her. Four or more witnesses stated that they did observe the bruises about appellee's throat and body. She testified that the bruises were the result of the choking and beating. If that event occurred the doctrine of condonation would not apply.

Although the appellee's children did not see this final beating they did observe the marks which she had testified were the results of it. Corroboration of grounds in contested divorce cases may be relatively slight where the divorce is hotly contested. *McNew v. McNew*, 262 Ark. 567, 559 S.W.2d 155 (1977). As there was corroboration of a series of beatings indicating a propensity for it, we conclude that the testimony of those who saw the marks on appellee's throat and body shortly after the beating had occurred is sufficient corroboration. She testified that at the time the final beating occurred he had forcibly removed a ring from her finger resulting in injuries to that finger. Several witnesses testified to noting those injuries the next day. We find no error in the chancellor's finding that the appellee had sufficiently proved and corroborated her grounds for divorce.

The appellant next contends that even if the appellee proved indignities to her person, it was error to grant the divorce because she was equally at fault because of her adultery. For the reasons previously stated we find no merit to this contention.

At the time of the marriage the appellee owned a tract of land in Lawrence County. About a month before the final

separation the appellee executed a deed which transferred that title to an estate by the entirety with the appellant. Two days later both parties executed a deed reestablishing title to the property in the sole name of the appellee. Appellant contends that the second deed should be set aside. He contends that because of his illiteracy he was unaware that the deed was not being reexecuted to merely correct a defect in recordation. He further contends that it was represented to him that the second deed was to validate the prior attempt to create an estate by the entirety and that it therefore should be set aside for fraud and misrepresentation.

The appellee testified that the purpose for initially consulting an attorney was because her original deeds were made to her in her former name of Slatton and she desired to have the title transferred to her under her married name of Bell. She indicated that since the date of their marriage the appellant had been insisting that she transfer the title to him but she had steadfastly refused. She stated that when they went to the attorney's office to execute the deed she had intended only to transfer title to herself in her married name but was persuaded by the appellant to consent to the inclusion of his name as well. The parties had mistakenly recorded the deed in Randolph County. The appellant testified that they returned to the attorney's office to reexecute the deed and she insisted at that time that the property be reconveyed to her in her name only.

The attorney testified that he explained to the parties that even though the deed had been recorded in the wrong county it was a valid deed between the parties and that if it was transferred to the appellee in her own name the estate by the entirety would be terminated. The appellee, the attorney and the secretary preparing the deed all testified that appellant knew when the second deed was executed that the title was being restored in appellee.

Both the attorney and the appellee testified that the appellant read the deed before he signed it. Appellant testified that he could not have done so because he was illiterate. Appellee offered testimony that the appellant could read and write and that he understood the contents of documents and papers. On the conflicting testimony the chancellor determined that the evidence of the appellee was more credible and entitled to greater weight. We cannot say that his conclusion that the appellant had failed to

prove by a preponderance of the evidence that the second deed was acquired as a result of fraud, misrepresentation or mutual mistake is against the clear preponderance of the evidence. If the appellee's testimony was believed, the execution of the first deed was merely her gift to him of an interest in the property, and the execution of the deed by him returning it to her was intended to be a return of it to her as a gift. There was no consideration for either deed. We find no error.

Affirmed.

CORBIN and COOPER, JJ., agree.