156

Kimberly LEINEN *v.* ARKANSAS DEPARTMENT of
HUMAN SERVICES

CA 93-947                                      886 S.W.2d 895

Court of Appeals of Arkansas
En Banc
Opinion delivered November 16, 1994

*Teri L. Chambers*, for appellant.

*Virginia B. Cantrell* and *David P. Cann*, for appellee.

GEORGE K. CRACRAFT, Special Judge. Kimberly Leinen appeals from an order of the juvenile division of Garland County Chancery Court (juvenile court) declining to exercise its jurisdiction in a custody proceeding and transferring the case to the courts of California as a more appropriate forum. We find no error and affirm.

On December 31, 1992, appellant gave birth to a baby girl in Garland County, Arkansas. On January 8, 1993, the Arkansas Department of Human Services (DHS) filed in juvenile court a petition for emergency custody of the child alleging that she was dependent and neglected and her welfare would be threatened if the order was not entered. The court entered an ex parte order granting the petition on that same date. A hearing on the matter was set for January 11, 1993. According to a social worker, appellant left the baby at the hospital and her whereabouts since she left were not known. Notice of the January 11 hearing had not been served on appellant and she did not appear. The court then entered an order placing temporary custody in the father with permission for the child to actually reside with the paternal grandmother in California. Thereafter, on reports from the guardian ad litem, the court rescinded its most recent order, directed that the child's custody be returned to DHS, and set a hearing for February 1, 1993. In the interim, the father filed suit for divorce in California seeking custody of the child, and appellant filed suit for similar relief in the chancery court of Saline County, Arkansas. Appellant's suit was dismissed on January 14 on a finding that she was not a resident of that county. The California court retained jurisdiction of the father's action, and pursuant to Ark. Code Ann. § 9-13-207(d) (Repl. 1993) the two courts communicated.

After the hearing of February 1, 1993, of which appellant was notified and at which she appeared, the Arkansas juvenile court, on its own motion, noted by docket entry that it would defer jurisdiction to the court in California. Appellant filed a motion for a rehearing on the question of whether the Arkansas court should continue to exercise jurisdiction. The motion was granted and an evidentiary hearing was held. After the rehearing, the juvenile court again decided that it should decline to exercise jurisdiction in the matter and instead should relinquish jurisdiction to the California court, and a written order to this effect was entered.

Appellant brings this appeal contending that the juvenile court erred in declining to exercise jurisdiction in the case. Appellant first contends that the court erred in relying on the provisions of Ark. Code Ann. § 9-13-206 (Repl. 1993). That section provides that a court of this State "shall not exercise jurisdiction under this subchapter if at the time of filing the petition a proceeding concerning custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subchapter. . . ." We agree that this section has no application because, at the time the petition was filed in the juvenile court of Garland County, the divorce action in California had not been commenced.

We cannot agree, however, that the juvenile court erred in its application of Ark. Code Ann. § 9-13-207, which provides in pertinent part as follows:

> (a) A court which has jurisdiction under this subchapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

> (b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

> (c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that

another state assume jurisdiction. For this purpose, it may take into account the following factors,

(1) If another state is or recently was the child's home state;

(2) If another state has a close connection with the child and his family or with the child and one (1) or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate; and

(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in § 9-13-201.

Appellant argues that the evidence pertaining to these factors mandates a conclusion that Arkansas rather than California was the more convenient forum. We do not agree.

The information on which the juvenile court acted would establish that the parents were residents of the State of California and had come to White County, Arkansas, on a two-week visit. The mother left her husband and another child of the marriage in Searcy and went to Garland County with another man. Appellant went into premature labor and the child was born a few hours after her arrival in Garland County. She informed the doctor that she had received no prenatal care and had used marijuana during her pregnancy. He contacted DHS, which found that appellant "gave conflicting information" as to her address. Appellant's husband had filed a missing person report on her in White County before leaving for California with their other child. The mother left the hospital without the child and the social worker could not locate her. The social worker stated that, if she had not taken appellant's daughter, the child would have been abandoned.

When the father was notified, he immediately returned to Arkansas for the January 11 hearing and, thereafter, took the

infant to California. The paternal grandmother is a pediatric nurse in California and alleged that she had custody of appellant's other daughter. The father's family resides in the State of California, where he contended the parties had theretofore resided. While much of this was hearsay evidence, it was not objected to by appellant either at the hearing held pursuant to her motion or in her argument on appeal.

■■ Appellant's position that the evidence clearly preponderated in favor of a finding of greater contacts with Arkansas is based upon the assumption that only her testimony was to be believed. However, the court was not required to believe any witness. *Gatlin* v. *Gatlin*, 306 Ark. 136, 811 S.W.2d 761 (1991); *Bell* v. *Bell*, 15 Ark. App. 196, 691 S.W.2d 184 (1985). We cannot conclude that the record does not support the juvenile court's findings that California is the place of the parties' residence and the location of greater available evidence regarding the child's protection and personal relationships, or that the court abused its discretion in declining to exercise jurisdiction.

■ Appellant next contends that the juvenile court refused to consider the financial burden that its order would place on her in presenting her case to the California court. While relative financial burdens is not a factor listed in the statute, the record discloses that the court did consider whether appellant would be able to return to California for a hearing. The court determined, however, that as most of the evidence relative to the prospective care of the child would require the presence of persons from California, the burdens of presenting the case in Arkansas would outweigh any burden placed on appellant by its order of transfer.

■ It was argued in our conference of this case that the Arkansas Juvenile Code required the court to follow a definite procedure subsequent to the entry of the emergency order, that the court did not follow that procedure, and that it thereby erred in its action. This issue was not raised in the juvenile court, nor was it briefed and argued on appeal. It is our settled rule that issues not raised in the trial court will not be considered on appeal. *Clark* v. *Tabor*, 38 Ark. App. 873, 830 S.W.2d 131 (1994). Nor will issues not argued and briefed on appeal be raised sua sponte in this court unless we determine that the trial court wholly lacked subject matter jurisdiction. *See In re Adoption of D.J.M.*,

39 Ark. App. 116, 839 S.W.2d 535 (1992); *cf. Skelton* v. *City of Atkins,* 317 Ark. 28, 875 S.W.2d 504 (1994); *Bratcher* v. *Bratcher,* 36 Ark. App. 206, 821 S.W.2d 481 (1991).

■ The Garland County Juvenile Court did have subject matter jurisdiction of this case. Jurisdiction of the subject matter is that power conferred on a court to adjudge certain matters and to act on the facts alleged. Such jurisdiction does not depend on a correct exercise of that power. If the court errs in its decisions or proceeds irregularly within its assigned jurisdiction, the remedy is by direct action in the erring court or by appeal. *Banning* v. *State,* 22 Ark. App. 144, 737 S.W.2d 167 (1987); *see Birchett* v. *State,* 303 Ark. 220, 975 S.W.2d 53 (1990). The juvenile courts of this State have original subject matter jurisdiction of, among other things, matters in which it is alleged that a child is dependent-neglected. Ark. Code Ann. § 9-27-306(a)(1) (Repl. 1993). In this case, this allegation was made in the petition and supporting documents and evidence. If, in fact, the trial court did err in the procedural application of its statutory power to adjudicate the issue, the remedy was direct action seeking to correct that error in the trial court or an appeal raising that issue to the appellate court. Appellant did neither.

Affirmed.

BRUCE BULLION, Sp. J., joins in this opinion.

ROGERS and COOPER, JJ., dissent.

MAYFIELD and ROBBINS, JJ., not participating.

JUDITH ROGERS, Judge, dissenting. The record in this case amply supports the conclusion that the trial court abused its discretion, given the substantial ties that the parties and the child have to the State of Arkansas, coupled with circumstances which reveal that a manifest injustice has occurred. Therefore, I respectfully dissent to an affirmance of the chancellor's decision deferring jurisdiction to the California Court.

On December 31, 1992, a female child was born prematurely at a hospital in Garland County. On January 8, 1993, the Department of Human Services applied for and obtained an *ex parte* order for emergency custody, thereby invoking the jurisdiction of this juvenile court and placing the child under the pro-

tective aegis of that court. As required by Ark. Code Ann. § 9-27-315(a) (Repl. 1991), a hearing was scheduled for January 11th. It is undisputed that appellant, the mother of the child, was not notified of this hearing. At the conclusion of this hearing, without any investigation whatsoever, the chancellor, with the advice and consent of appellee, allowed the child to be removed from this State to the State of California by giving custody to the father, with placement in his mother. Oddly, no order was entered reflecting this action until March 16, 1993. The court's docket from January 11 does contain an entry stating, "custody to father; placement with mother." Notably, the entry also states that the court would "retain jurisdiction unless or until another ct."

On January 14, 1993, the attorney ad litem which had been appointed for the child filed an emergency petition requesting that the child be placed back into appellee's custody. In this petition and accompanying affidavit, the attorney alerted the court of his concerns about placement of the child with the father. The ad litem related that he had been told by appellant that the father had been neglectful of their other children and that he was engaged in a continuing course of criminal conduct. He also advised the court that appellant had told him of an incident where she had been threatened by the father with a shotgun. The ad litem also reported that the case worker for appellee had been advised by appellant that the father was under investigation by the Federal Bureau of Investigation, but that the case worker had not taken this information seriously and had refused to contact the FBI regarding the matter. He said that he had done so, and had learned that the father was indeed under investigation for wire fraud and that an indictment was forthcoming. On January 26, the court granted the attorney ad litem's petition and ordered that the child be returned to appellee's custody. A hearing was set for February 1.

Appellant did receive notice of this hearing and appeared on that date prepared to defend the action. Not surprisingly, and with amazing foresight, neither the father, nor his mother who had filed a motion to intervene and petition for custody of the child, were present for the hearing; thus, despite the court's order commanding the return of the child, the child remained in California. Most remarkably, however, there was no hearing at all held on that date, because at the outset, the chancellor announced,

over appellant's strenuous objection, that he was dismissing the case in favor of a court in California.

Thereafter, appellant filed a motion for rehearing, and ultimately appellant was granted the opportunity to present evidence, but only on the jurisdictional question. At this hearing, appellant testified that she and her husband had gotten married in Little Rock in February of 1991, and had lived in Arkansas until March of 1992. The record indicates that one of the parties' children had died and was buried in Arkansas. Appellant said that they went to visit husband's parents in California "as a place we were going to go to get away from Arkansas." She said that they stayed there from that March until the following December, when they returned to Arkansas. Appellant stated, however, that while they were in California, they made trips to Arkansas two to three times a month because her husband's telemarketing business was located in Little Rock. She said that it had been her intent to remain in Arkansas where she had family.

Appellant further testified that she left her husband, after years of abuse, on December 29, when he had threatened her with a shotgun. She indicated that the man with whom she had left was called by her husband to come get her. She said that they went to Magic Springs to get her mind off of things, but that she had gone into labor prematurely and had given birth to the child on December 31. She stated that the child had to remain in the hospital because she had been born a month early, and was very small. Appellant said that she was instructed to learn how to operate a monitor and to take a course in CPR, since one of their children had died of SIDS. She testified that she took the CPR course and she produced evidence that she had rented a monitor for the child.

Despite appellee's claim of abandonment, the record reveals some foreknowledge on the part of appellant of appellee's intent to obtain custody. When the child was taken, appellant had retained the services of a lawyer, and the case worker testified at the first hearing that the *ex parte* order was sought on the day that appellant had planned to take the child home from the hospital. In addition, the case worker testified that appellant had told her that she was going to go to the hospital to see her child one more time.

Also, at the hearing, the chancellor was informed by the father's attorney that the father was in California for the purpose of retaining residency for the divorce action, and the attorney added that the "only reason he's in California is to cooperate with the Federal authorities."

The record in this case supports the view that the parties' ties to this state were greater than those established in California. The parties were married in Arkansas and had lived here throughout their marriage; this was the place where the husband's business was located; and, they had buried a child here. One can easily infer that their presence in California had something to do with the FBI's investigation of the husband's business practices. And, while taking refuge in California, frequent trips were made to this state. Contrary to the majority's view, the evidence does not demonstrate that their presence in Arkansas was simply for a "two-week visit."

From a review of the record, including the chancellor's remarks which were made throughout the proceedings, it appears that the proper focus of this case, being the best interest of the child, was overlooked, and became secondary to the court's concern about some other court handling the matter. It appears that the chancellor felt that the case was in his court only by accident of birth. But, accident or not, the child was born in a Garland County hospital, and the court's jurisdiction was invoked by appellee when it filed the petition for emergency custody. Thus, accident or not, it fell to the court to take some action to protect and promote the best interests of the child. Instead, the chancellor abdicated this responsibility by allowing the child to be removed from this state without benefit of any investigation. And, although it was deemed necessary for that order to be rescinded, the order calling for the return of the child was never enforced, and the court summarily dismissed the case.

In sum, I can only conclude that the chancellor erred by declining to exercise jurisdiction over this case. The record reflects definite and sufficient contacts with this state, where the child was born, whereas the parties' stay in California was of short duration and of an impermanent nature. In essence, the court created jurisdiction in the California court over a custody matter when the court allowed the child to be taken there. But for the child's

presence in California, a court of that state would have had little or no basis for the exercise of jurisdiction over a custody matter. Also, permitting the removal of the child from the state effectively left the court without any means of enforcing any orders which it might have chosen to make if it had retained jurisdiction. In the meantime, appellant has lost her child on an allegation of dependency-neglect, which was never proven. I find an abuse of discretion and would not let this decision stand.

COOPER, J., joins in this dissent.