The Honorable Charles L. Ormond State Representative 1500 View Street Morrilton, AR 72110-3725
Dear Representative Ormond:
I am writing in response to your request for my opinion regarding the application of recently adopted Arkansas Game and Fish Commission Regulation 11.08, which prohibits "hunting, fishing or trapping without landowners/lessee permission." You have posed the following question:
 Could a dog owner be ticketed by a wildlife enforcement officer for his dog being on someone else's property without prior complaint from the property owner?
RESPONSE
In my opinion, the answer to your question is "yes," subject to the condition that the wildlife enforcement officer has this authority only with respect to dogs that have been purposely released in order to hunt. I have reached this conclusion notwithstanding the fact that A.C.A. §15-41-113 might arguably be read as criminalizing the act of ticketing under such circumstances. Although I do not believe A.C.A. § 15-41-113
applies to regulations adopted after its enactment, which preceded the issuance of Regulation 11.08, I would reach the same conclusion even if it did apply. Given that the Arkansas Constitution affords the Game and Fish Commission exclusive authority to regulate hunting, Ark. Const. amend. 35, I believe any legislative effort to restrict this authority is constitutionally impermissible. The question of whether a dog was released in order to hunt is obviously one of fact that only a court could address. If the circumstances reflect that a dog was released accidentally or for any purpose other than to hunt, I believe the wildlife enforcement officer would lack the authority to issue a citation.
Arkansas Game and Fish Commission Regulation 11.08, which was adopted in June 2002, provides in pertinent part:
 (A) It shall be unlawful for any person to hunt, fish, or trap wildlife upon the private property of another without having first obtained permission from a landowner or lessee of the property.
 (B) Notwithstanding the provisions of subsection (A), it shall be unlawful for any person to hunt, fish, or trap wildlife upon the private property of another without carrying written permission from a landowner or lessee of the property if the property is lawfully posted or fenced in accordance with one of the methods provided in Arkansas Codes 18-11-404 or 18-11-405. The written permission must include the name of the person permitted upon the property, the signature and telephone number of the landowner or lessee, and the beginning and ending dates of the permission period.
 EXCEPTION: Written permission shall not be required under subsection (B) if the person hunting, fishing or trapping wildlife is the spouse, mother, father, son, daughter, brother, sister, uncle, aunt, son-in-law, daughter-in-law, niece, nephew, grandson, granddaughter, grandmother, or grandfather of the landowner or lessee of the private property, and has actual permission of the landowner or lessee.
 PENALTY: $100.00 to $1,000.00.
Subject to the recited exception, this regulation criminalizes hunting, fishing or trapping on private property without permission and expressly provides that the permission must be in writing if the property is fenced or posted in accordance with law. Although this regulation does not expressly address the issue, I believe a court would conclude that an individual who purposely releases a dog for the purpose of hunting would himself be deemed to be hunting on any private property onto which the dog encroached, thus justifying a wildlife enforcement officer in issuing a citation under this regulation.
Having ventured this opinion, I feel obliged to note that the legislature has purported to restrict by statute the power of the Game and Fish Commission to enforce at least some of its regulations restricting sportsmen's use of free-running dogs.[1] Section 15-41-113 of the Code provides:
 The General Assembly declares that any employee of the Arkansas State Game and Fish Commission enforcing or attempting to enforce the existing regulations of the commission with respect to dogs running at large shall immediately, upon conviction thereof, be discharged from employment and shall be ineligible for reemployment by the commission. In addition, any employee or official of the commission attempting to enforce such regulation in violation of this section shall be subject to a fine of not less than five hundred dollars ($500) nor more than five thousand dollars ($5,000) or imprisoned in the county jail not less than thirty (30) days nor more than ninety (90) days, or be both so fined and imprisoned. Each violation of this section shall constitute a separate offense and shall be punishable accordingly.
This statute, enacted as Act 367 of 1969, presumes to criminalize any enforcement by the Game and Fish Commission of "existing regulations of the commission with respect to dogs running at large."[2]
In my opinion, a court would in all likelihood reject any suggestion that this statute bears on the application of Regulation 11.08. On its face, the statute prohibits enforcement only of "the existing regulations" (emphasis added) — i.e., of regulations in effect as of August 7, 1969, the effective date of Act 367 of 1969. A review of Act 367 further suggests that the legislature indeed intended it to apply only to regulations then in effect, as opposed to regulations subsequently adopted. The act initially expresses concern that existing regulations are so broad as to prohibit farmers from using their dogs for farm purposes and to prohibit fox hunters from using dogs even though such use purportedly poses no hazard to wildlife. Section 1 of the act then purports to prohibit the enforcement of regulations relating to the running of dogs for a two-year period, during which the Commission and interested sportsmen will conduct a "comprehensive study" followed by public hearings to determine what regulations are warranted. Section 1 further purports to dictate that the Game and Fish Commission set aside a fund "to compensate owners of dogs for any deprivation of the lawful use thereof resulting from such Commission regulations." These provisions suggest that the legislature was intent on first remedying an existing problem and then providing a resource to compensate individuals for damages resulting from the Commission's future enforcement of regulations relating to the running of dogs. These provisions are flatly inconsistent with any suggestion that the legislature intended to prohibit the enforcement of any and all regulations relating to the running of dogs, regardless of when the regulations were adopted. In my opinion, then, the enforceability of Regulation 11.08 is unaffected by A.C.A. § 15-41-113.
Although courts as a general rule avoid constitutional questions when it is possible to dispose of a case on other grounds, McNew v. McNew,262 Ark. 567, 559 S.W.2d 155 (1977); Osage Oil and Trans. Inc. v. City ofFayetteville, 260 Ark. 448, 541 Ark. 922 (1977), as I have attempted to do in the preceding paragraph, I believe a court would declare A.C.A. §15-41-113 constitutionally objectionable, and as such unenforceable, even if it were interpreted as prohibiting Regulation 11.08. In assessing the constitutionality of this statute, I am guided by the following:
 Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20 (1999); ACW, Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770 (1997). If it is possible to construe a statute as constitutional, we must do so. Jones v. State, 333 Ark. 208, 969 S.W.2d 618 (1998). In construing a statute, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law. McLeod v. Santa Fe Trail Transp. Co., 205 Ark. 225, 168 S.W.2d 413
(1943). We must also give effect to the legislature's intent, making use of common sense and giving words their usual and ordinary meaning. Kyle v. State, 312 Ark. 274, 849 S.W.2d 935 (1993).
Bunch v. State, 344 Ark. 730, 736, 43 S.W.3d 132 (2001). The legislature has the absolute power to legislate, unless prohibited from doing so by the constitution, either expressly or by necessary implication. Black v.Cockrill, 239 Ark. 367, 369, 389 S.W.2d 881 (1965). Moreover, "[i]t is well settled that before an act may be struck down as unconstitutional, it must clearly appear that the act is at variance with the Constitution." Hamilton v. Jeffrey Stone Co., 25 Ark. App. 66, 69,752 S.W. 2d 288 (1988), citing Handy Dan Improvement Center Inc. v. Adams,276 Ark. 268, 633 S.W.2d 699 (1982). However, notwithstanding the foregoing, it is well established that constitutional provisions, including amendments, take precedence over any contrary law passed by the legislature. Gravett v. Villines, 314 Ark. 320, 326, 862 S.W.2d 260
(1993).
At issue is whether any provision in the constitution precludes the legislature from restricting the Game and Fish Commission's power to regulate the use of dogs in the pursuit of wildlife. In my opinion, any statute presuming to restrict the regulation of wildlife resources — possibly including a statute that would limit the enforceability of Regulation 11.08 — would clearly run afoul of Ark. Const. amend. 35, which provides in pertinent part:
 § 1. The control, management, restoration, conservation and regulation of birds, fish, game and wildlife resources of the State, including hatcheries, sanctuaries, refuges, reservations and all property now owned, or used for said purposes and the acquisition and establishment of same, the administration of the laws now and/or hereafter pertaining thereto, shall be vested in a Commission to be known as the Arkansas State Game and Fish Commission. . . .
* * *
 § 8. . . . The Commission shall have the exclusive power and authority
to issue licenses and permits, to regulate bag limits and the manner of taking game and fish and furbearing animals, and shall have the authority to divide the State into zones, and regulate seasons and manner of taking game, and fish and forbearing animals therein, and fix penalties for violations.
(Emphasis added.) In accordance with this unequivocal constitutional language, the Arkansas Supreme Court has held that Amendment 35 both repealed any and all prior legislation, whether directive or restrictive in nature, that regulated hunting, fishing or trapping, State ex rel.Wright v. Casey, 225 Ark. 149, 279 S.W.2d 819 (1955), and divested the legislature of any future power to regulate wildlife resources beyond making appropriations and raising annual resident hunting and fishing license fees, Farris v. Arkansas State Game Fish Commission,228 Ark. 776, 310 S.W.2d 231 (1958). The court has further acknowledged that Amendment 35 gave the Commission greater power to act independently than other state agencies that are not constitutionally created entities.Chaffin v. Arkansas Game and Fish Commission, 296 Ark. 431,757 S.W.2d 950 (1988).
Given the breadth of the exclusive authority granted the Game and Fish Commission by Amendment 35, the courts have held that all wildlife regulations have the effect of law. Dennis v. State, 26 Ark. App. 294,764 S.W.2d 466 (1989). Moreover, the constitutional directive that the Commission's authority over wildlife management will be "exclusive" dictates that any effort by the General Assembly to restrict regulations relating to "the manner of taking game and fish and furbearing animals" must be considered a nullity. Since the use of free-running dogs in pursuit of wildlife clearly relates to the "manner" of that pursuit, I believe a court would almost certainly declare A.C.A. § 15-41-113
unconstitutional as an impermissible effort to restrict the Game and Fish Commission's discretion.
With regard to your particular question, I must again stress that nothing in this opinion should be read as suggesting that a wildlife enforcement officer may invariably ticket an individual for allowing his dog to run free on another's property. Pursuant to Amendment 35, the Game and Fish Commission's exclusive regulatory authority is limited to matters involving wildlife management. Regulation 11.08 clearly falls within the scope of the Commission's authority in forbidding hunting, fishing or trapping on private property without the permission of the owner or lessee. In my opinion, notwithstanding the unlikely but possible applicability of A.C.A. § 15-41-113, Regulation 11.08 clearly empowers a wildlife officer to ticket an individual who deliberately releases a dog onto private property for the purpose of hunting. However, neither the regulation nor Amendment 35 authorizes a Commission employee to ticket someone whose dog encroaches onto private property either by accident or for some purpose other than hunting.[3] Needless to say, the question of whether an owner has allowed his dog to encroach onto private property for the purpose of hunting is one of fact that only a court could resolve. See Ark. Ops. Att'y Gen. Nos. 89-189 and 89-045 (both opining that the question of whether a loose dog is hunting on posted land is one of fact).
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] The current restrictions are set forth in Arkansas Game and Fish Commission Regulations 2.01 (deer archery); 2.02 (deer gun); 2.08 (squirrels); 2.19 (bears); 2.21 (elk); 4.05 (wild turkeys); and 9.00 et seq. (use of dogs generally).
[2] Although the term "dogs running at large" would include dogs loose for any reason, the term must necessarily be restricted to dogs released in relation to hunting, since the Commission is constitutionally authorized to regulate only "the manner of taking game and fish and furbearing animals." Ark. Const. amend. 35, § 8. See discussion infra. In accordance with this restriction, all of the current regulations referenced in footnote 1 relate only to the use of dogs in hunting.
[3] Since you have not broached the issue in your request, I will not address a dog owner's potential liability under any other charge, possibly including trespass, in the event of such encroachment.